IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                  Case No. 25-10087-5-JWB

COLE MORIN,
a/k/a Cole Alexander,

        Defendant.

**MEMORANDUM AND ORDER**

This matter is before the court on the government's appeal of the magistrate judge's order of release, and its motion for detention. (Doc. 54.) The court held a hearing on October 22, 2025. For the reasons stated herein, the government's motion for detention is GRANTED, the magistrate judge's order of release (Doc. 49) is REVOKED, and Defendant is committed to the custody of the Attorney General of the United States pending trial.

**I.    Facts**

On September 3, 2025, a grand jury returned an indictment against Defendant that charged him with one count of production of child pornography in violation of 18 U.S.C. § 2251(a). (Doc. 1.) The government proffered facts relating to the alleged offenses as follows.

Defendant's communications with Minor Victim 1 ("MV1") were discovered after a forensic extraction of MV1's phone. The government proffers that this extraction showed that Defendant, along with a multitude of other men, sent MV1 messages to engage in child pornography and sex offenses. MV1's messages show that Defendant began sending messages on or around April 25, 2025, when MV1 was in middle school and Defendant was 22. Defendant

sent MV1 messages calling her "baby", "babe", "wife", "wifey" and "mommy", tells her she is sexy, and describing how much he loves her.

On or about May 2, 2025, Defendant sent the following messages to MV1:

- Defendant: I bet you won't show me your tits
- MV1: I can
- Defendant: I bet you won't
- Defendant: I'm horny right now baby

MV1 then sent a picture message, containing an image of MV1 from the waist up with her nude breasts exposed. Defendant replies, "Yes baby" and "I bet you won't show me your pussy baby." Investigators then saw a picture message was sent shortly thereafter, containing an image of MV1 standing in front of the camera, wearing no pants or underwear with her vagina exposed, to which Defendant replies, "Yes sexy mommy."

On May 6, 2025, Defendant contacted MV1 again via Facebook Messaging, and saying, "I bet you won't show me something below baby. I bet you won't show me anything" MV1 replies, "I can," and a 1 hour, 34 minute and 28 second video call follows. Defendant then sent more messages to MV1 over the following days, including:

- "I bet you won't show me your pussy baby"
- "Can you show me your pussy please wife"
- "Take your shirt off. Make it cum for daddy"

These communications were followed by an exchange on May 16, 2025, where Defendant sends MV1 the Facebook message, "I love you baby girl," and MV1 replies, "I love you to baby boy." After this exchange, investigators saw a picture message was sent from MV1, where MV1 is not wearing a shirt or bra, and her nude breasts are exposed.

2

The next day, May 17, 2025, MV1 sent Defendant the Facebook message, "I am getting ready to get in the tub I will call you when I get out," to which Defendant replies, "Send me pictures on Snapchat when you are done." In response, MV1 says "Ok I will do that baby" and she sent Defendant a message containing a picture where she is standing nude in front of the camera with her breasts and vagina exposed. A similar incident occurred on June 29, 2025, when MV1 sent a message to Defendant saying, "If you want to call me you can I'll just be in the shower" followed by a message which was not recoverable. Defendant replies, "Yes baby," and a 1 minute, 56 second video occurs between Defendant and MV1. After this, MV1 sent Defendant a nude photo, where MV1 is positioned in front of the camera, on her hands and knees with her breasts and pubic area visible.

Based on the indictment in this case, Defendant was arrested on October 3, 2025. That same day, Defendant was detained upon the government's motion at his arraignment and counsel was appointed to represent him. (Docs. 31, 32.) The government moved for a detention hearing, and on an oral motion, that detention hearing was continued. (Doc. 32.) On October 10, 2025, the magistrate judge held a detention hearing and ordered that Defendant be released pending trial under various conditions. (Docs. 48, 49.) The government now seeks revocation of the order of release and an order that Defendant be detained pending trial. (Doc. 52.)

Considering the motion, the court held a hearing at which the government proffered the above facts, and the court also heard testimony from Ms. Tammy Hammond about a potential individual justice plan which would place Defendant at Rosewood Services ("Rosewood") in Great Bend, Kansas. Rosewood provides group home living arrangements and daily activities for individuals with intellectual disabilities. Ms. Hammond is the executive director of Rosewood, and she testified that she believes that Rosewood can provide Defendant with a secure environment

that would mitigate any danger Defendant presents to the community while also allowing Defendant to await trial on the present charges in a safe environment suited to his mental and physical needs.

## II.     Standard

Pursuant to 18 U.S.C. § 3145(a)(1), the government may seek review of a magistrate judge's order of release.  The district court's review of a magistrate judge's order of release is de novo.  *United States v. Cisneros*, 328 F.3d 610, 616 n. 1 (10th Cir. 2003).  A de novo evidentiary hearing, however, is not required.  The district court may either "start from scratch and take relevant evidence or incorporate the record of the proceedings conducted by the magistrate judge including the exhibits admitted."  *United States v. Collier*, No. 12-20021-09, 2012 WL 4463435, at *1 (D. Kan. Sept. 27, 2012) (citing *United States v. Torres*, 929 F.2d 291, 292 (7th Cir. 1991)).  The Federal Rules of Evidence do not apply to detention hearings.  *See* 18 U.S.C. § 3142(f).  The court may allow the parties to present information by proffer or it may insist on direct testimony.  *See id.*

Under the Bail Reform Act of 1984, the court must order a defendant's pretrial release, with or without conditions, unless it "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community."  18 U.S.C. § 3142(e).  In making this determination, the court must take into account the available information concerning:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, [or] a violation of section 1591...;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including-
>
>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community,

4

> community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Authority to request detention in this matter arises from several subsections of the Bail Reform Act. Detention is authorized pursuant to 18 U.S.C. § 3142(f)(1)(A), as production of child pornography is a crime of violence as that term is defined in § 3156(a)(4)(C) which specifically lists offenses under Chapter 110. Detention would otherwise be authorized pursuant to 18 U.S.C. § 3142(f)(1)(E) as the offense involves minor victims. Moreover, there is a presumption of detention that applies in this matter pursuant to 18 U.S.C. § 3142(e)(3)(E). "A grand jury indictment provides the probable cause required by the statute to trigger the presumption." *United States v. Walters*, 89 F. Supp. 2d 1217, 1220 (D. Kan. 2000) (citing *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990)).

The burden of production on Defendant to overcome the presumption is not a heavy one, but Defendant must produce some evidence. *United States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991). Even if Defendant overcomes the presumption, the presumption remains a factor in the court's detention decision. *Id*. The burden of proof remains with the government to show that no condition or combination of conditions would reasonably assure the accused's presence in later proceedings and/or the safety of other persons and the community. *United States v. Lutz*, 207 F. Supp. 2d 1247, 1251 (D. Kan. 2002) (burden of persuasion regarding risk of flight and danger to community always remains with government). The government must prove dangerousness to any

other person or the community by clear and convincing evidence. *Id*. at 1252

### III.     Analysis

#### A. Nature and Circumstances of the Offense

In reviewing this factor, the court is to consider the nature and circumstances of the offense charged, including whether it is a crime of violence. The offense charged here constitutes a crime of violence since it involves the production of child pornography, a felony under chapter 110 of Title 18. *See* 18 U.S.C. § 3156(a)(4)(C). The communications between MV1 and Defendant, as proffered at the hearing, show that Defendant willingly accepted child pornography and in fact requested it on several occasions. Moreover, the government proffered at the hearing that based on a recent search of Defendant's phone, investigators identified two additional minor victims who appear naked in chats and images. Additionally, the government proffered that based on this same search of his phone, Defendant was communicating with at least six other individuals, both male and female, under the age of 18 in a manner that the government characterizes as grooming those minors to pursue relationships with them. No additional charges arising out of those recent discoveries have yet been filed. Defendant's counsel proffered that Defendant has the mental capacity of only a 15-year-old male, but even taking this fact into consideration, Defendant's willful and sustained sexual pursuit of MV1 and other minors indicates that Defendant's release would pose a high degree of danger to others in the community. Thus, this factor weighs in favor of detention.

#### B. Weight of the Evidence

The government's proffer indicates the weight of the evidence as to Defendant's involvement in child pornography is strong. Notably, Defendant did not dispute the facts about what transpired in his communications with MV1. It is true that Defendant is entitled to a

6

presumption of innocence; however, the evidence as proffered shows a continuous desire to obtain sexually explicit material from an individual whom Defendant knew was underage and is deeply concerning. After review of the proffered evidence, the court finds that this factor weighs in favor of detention.

### C. History and Characteristics of Defendant

Defendant is a disabled individual who has been diagnosed with ADHD, oppositional defiant disorder, mild intellectual disability, and autism spectrum disorder. Defendant has resided at Rosewood as an adult for several years, but before taking up residence at Rosewood, he had been living with his biological father and stepmother until the age of 18. Prior to that, he had been living in the foster care system because he had been removed from the care of his mother at the age of four. Def. Ex. A. According to testimony by Ms. Hammond and the Positive Behavior Support plan prepared by Rosewood, Defendant has struggled with "aggressive and explosive behaviors," and even while in Rosewood's care, "[Defendant] has struggles with sexually inappropriate behaviors, inadequate self-care, and limited adult-living skills, posing risks to his and others' safety." *Id.* This behavior is exemplified by Defendant's prior records. He has several state charges for battery and disorderly conduct, though only one charge for disorderly conduct resulted in a conviction. However, in a far more concerning situation, Defendant has a 2018 juvenile charge of aggravated criminal sodomy for performing oral sex on his younger stepbrother who was 6 at the time of the incident. Although there was no formal adjudication, the facts surrounding this charge, in addition to the charges and evidence in this case, show that the Defendant has a history of deviant sexual behaviors with minors.[1] As a result, Defendant's history

---

[1] The court also notes that Ms. Hammond in her testimony at the hearing stated that Rosewood was not aware of this prior incident involving the stepbrother when they created their individual justice plan for Defendant; however, she went on to testify that she did not believe any guardians of potential housemates would object to Defendant residing with them because one of the other housemates was also on an Individual Justice Plan for sexual behaviors.

7

and characteristics weigh in favor of detention.

### D. Danger to the Community

The court is required to order the pretrial release of a person subject to conditions unless the court determines that such release will endanger the safety of any other person or the community. *See* 18 U.S.C. § 3142(b). "The concern about safety is to be given a broader construction than the mere danger of physical violence. Safety to the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Kroeker*, No. 22-3092, 2022 WL 2610344, at *4 (10th Cir. July 8, 2022) (quoting *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989)).

While the facts in this case are certainly concerning, the court does acknowledge the excellent job Rosewood has done in preparing an Individual Justice Plan for Defendant. The court has rarely seen a more well-developed plan from a non-law enforcement entity regarding supervising an individual in similar conditions as Defendant, and the court is also impressed by the broad range of activities and resources Rosewood cultivates for all individuals in its care. Rosewood provides necessary and life-affirming services to a vulnerable and underserved portion of our society, and regardless of the decision in this case, Rosewood should be commended for its actions and services.

Nevertheless, taken as a whole, the court finds that the available information concerning the § 3142 factors show by clear and convincing evidence that Defendant's release would pose a danger to the community. Defendant is charged with production of child pornography, and while his counsel argues that Defendant's diminished mental capacity is a mitigating factor, Defendant does not dispute that he contacted MV1, an individual whom he knew to be 13-14 years old, and requested explicit, sexual images on various occasions. Moreover, according to the government's

8

search of his phone, Defendant was allegedly engaged in similar deviant behaviors with two other minor victims and was potentially grooming half a dozen potential victims. Defendant's alleged criminal conduct in this case indicates that he is a danger to the community. Although the testimony of Ms. Hammond and the supervision procedures proposed by Rosewood purport to provide Defendant with round-the-clock supervision to protect the community from Defendant's proclivities, Rosewood's proposed plan also indicates only a limited expectation that staff members at the group home would physically intervene to prevent Defendant from harming staff, house members, or guests.

And therein lies one of the court's biggest concerns. The fact that Defendant will be housed with other individuals who are among the most vulnerable subset of our community only serves to heighten the court's concern that Defendant presents a risk to those around him. Group homes such as those managed by Rosewood provide an important service to persons with intellectual disabilities and their families. In many cases families and guardians of such disabled persons see facilities such as Rosewood's group homes as providing an avenue to prepare their disabled family member or loved one for some level of assisted or independent living. Parents especially may agonize over these decisions because they are planning for the day that their disabled child must press on with life without them. The court does not see it as controversial to conclude that many such parents, family members, or guardians would be stunned and deeply troubled to learn that their intellectually disabled child or family member was being housed with a person who has a background like this defendant. Of all the things that such people want, surely the safety of the environment where their loved one is housed must rank near the top of the list.

It is with those concerns in mind that the court concludes that even the robust program Rosewood proposes is not sufficient in this case, and Defendant needs to be detained to protect

others from his previous behaviors, especially those with whom he would be housed or otherwise in community with at Rosewood.[2] The court finds that there are no conditions or combination of conditions that would reasonably assure the safety of the community if Defendant were released.

## IV.   Conclusion

The government has carried its burden of proving by clear and convincing evidence that there is no combination of conditions that would reasonably assure the safety of others and the community if Defendant were released pending trial. The magistrate judge's order of release (Doc. 49) is accordingly REVOKED and the government's amended motion for detention (Doc. 54) is GRANTED.

Defendant Cole Morin is hereby committed to the custody of the Attorney General, pending trial, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel and, upon an order of a court of the United States or on request of an attorney for the government, the person in charge of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

IT IS SO ORDERED.  Dated this 29th day of October, 2025.

                                                          __s/ John W. Broomes_____
                                                          JOHN W. BROOMES
                                                          CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The court adds the phrase "in community with" to reflect that, while the discussion thus far has focused on the group home where Defendant would live under the Rosewood plan, part of the daily activities that Defendant would undertake under Rosewood's supervision would include working and performing other activities and services at various Rosewood locations around Great Bend, Kansas. While the evidence presented at the hearing proposed that Rosewood would provide continuous supervision of Defendant in those situations, they nevertheless place Defendant in close proximity to other vulnerable individuals with intellectual disabilities throughout the day, thereby raising the risk for those members of the community and relying exclusively on the supervision of Rosewood employees to prevent any harmful interactions between Defendant and others. That is a heavy burden for non-law enforcement personnel to carry day in and day out, and it is one with which the court is not comfortable given the risks posed by this defendant.